IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW-JERSEY;

AT APRIL TERM, 1848.

---

### THE PROPRIETORS OF THE BRIDGES OVER THE PASSAIC AND HACKENSACK ADS. THE STATE.

1. All toll Bridges are liable to taxation, unless specially exempted.

2. The Proprietors of the Bridges over the Hackensack and Passaic are not tenants of the State, although the words of the contract made by the commissioners under the act of Nov. 24, 1790, were proper and technical words to create a lease.

3. A grant of franchises for a limited time, after which they revert to the State is not a lease.

4. The toll Bridges over the Passaic and Hackensack are liable to be taxed as other toll Bridges are.

This matter was brought before this court by a *Certiorari* directed to Justice Van Winkle of the county of Hudson, the

384

justice who had issued the usual tax warrant for the township of Harrison in the county of Hudson, against the delinquents returned by the township collector; among whom the collector had returned "The Proprietors of the Bridge over the rivers Passaic and Hackensack," the prosecutors of the *Certiorari*, whose toll bridges over those rivers, both partly in the township of Harrison, had been assessed for state, county and township taxes by the township assessor; these taxes not being paid, the justice had included them in the tax warrant.

The erection of these bridges was authorized by an act passed Nov. 24, 1790 (*Pamphlet Acts, p. 685, c. 333*) by which commissioners were appointed to view the ground and fix upon the site of the bridges, and to lay out a road leading over the same from the courthouse in Newark to Powles Hook. By the 10th section of the act it was enacted " that it shall and may be lawful for said commissioners at their discretion to *let* the said bridges, *to farm* to any person or persons whatsoever, to be erected and made, and afterwards made and kept in good repair by the toll arising therefrom," and " for the commissioners or persons farming or having the care of said bridges, to have and receive such rates or toll as the said commissioners shall in their judgment appoint and direct, not exceeding three-fourths of the then rates of ferriage."

The eleventh section of that act enacted " that it shall and may be lawful for said commissioners at their discretion to *contract and agree* with any persons who will undertake the same for such toll, or for so many years and upon such conditions as in their discretion they shall deem expedient;" and by section 11th it is enacted, " that said contract so made shall be valid and binding on the state of New Jersey, and as effectual as if the same and every part, covenant and condition therein contained, had been particularly and expressly set forth and enacted in this law." By section 16th it is enacted " that the person or persons to whom said bridges, or either of them, shall from time to time be let to farm shall be obliged to keep the same in good and sufficient repair; and if such farmer or farmers, or other person so contracting as aforesaid with the said commissioners shall at any time neglect to keep such bridge or bridges

in good repair, such person or persons shall be liable to be presented by the Grand Jury," &c.

The 22d section enacts " that the bridges to be built by virtue of this act shall continue the property of the persons herein mentioned, their executors, administrators, or assigns, for the term of 99 years from the passage of this act, and no longer."

The commissioners by indenture dated Feb. 19 1793, " granted, demised, and to farm let " to certain persons the bridges *to be erected* over the Passaic and Hackensack for 97 years from Nov. 24, 1792, with covenants on the part of the grantees to perform certain specified duties, and giving to them the right to take tolls.

These persons with whom the commissioners made the contract were afterwards by act of the Legislature passed March 7, 1697, (*pam. laws, c.* 653, *p.* 201,) incorporated as " The Proprietors of the Bridges over the rivers Passaic and Hackensack "— and under the deed from said commissioners erected and still maintain the bridges over said rivers.

The question intended to be raised in this case is whether the toll Bridges of this company thus erected are liable to taxation.

*Gifford*, and *Bradley*, for the defendants.

*Pennington*, and *Frelinghuysen*, for the State.

The CHIEF JUSTICE delivered the opinion of the court.

The material question presented for consideration in this cause is, whether certain toll bridges, the property of the defendants, are by law exempt from taxation.

The right of taxation is an inherent attribute of sovereignty. All the property of every citizen is *prima facie* liable to this charge. He therefore who claims that his property is exempt from the common burthen, must shew clearly his title to such exemption.

In the present instance it is admitted that there is no express exemption of the defendants' property from taxation. Nor is it denied that the property itself is a *proper subject of taxation,* or that property of the like nature in the hands of others is ex-

empt. On the contrary, it is admitted that the statute enumerates toll-bridges as one species of property, upon which taxes are to be assessed.

Their exemption is claimed upon the ground that the bridges upon which the assessment is made are the property of the state. The defendants it is insisted hold as lessees, under a lease made by authority of the state; that they are but tenants for years; the ultimate fee being in the state. And that by the universal principle of taxation, the landlord not the tenant, the freehold not the estate for years, must bear the burden of the assessment.

Admitting, for the sake of argument, the soundness of the principle, it becomes necessary to ascertain with precision, what interest the defendants have in the subject of taxation; and whether in point of fact they bear to the state the relation of tenants.

By an act of the Legislature of this State, entitled "An act for building bridges over the rivers Passaic and Hackensack, and for other purposes therein mentioned," passed on the 24th of November, 1790, five commissioners were appointed with full power and authority to carry into effect the objects of the act. By the preamble it appears that the main design of the statute was the erection of bridges over the Passaic and Hackensack, and that the other powers conferred upon the commissioners were merely auxiliary to the main design. The commissioners thus appointed were especially authorized to select suitable sites for bridges over the rivers Passaic and Hackensack, and to erect or cause to be erected at those sites, bridges of the peculiar construction and description specified in the act. They were also authorized to lay out a road four rods wide between the city of Newark and Powles Hook, passing over and connecting the said bridges.

And in order the better to carry into execution the ends proposed by the act, the commissioners were authorized at their discretion to contract with any person who would undertake the same for such toll, and for so many years, and upon such conditions as to them should seem expedient. And such contract when made, executed and delivered in conformity with the act, is declared to be valid and binding on the parties contracting as well as on the State of New Jersey, and as effectual to

all intents and purposes, as if the same and every part thereof had been expressly set forth and enacted in the said law.

It is also enacted that the said bridges should be built within four years—that when erected they should be and remain toll bridges—that the said commissioners and their assigns should have this right of taking tolls thereon, and that no other bridge should be erected either over the Passaic or over the Hackensack within certain specified limits.

And it is further enacted that the bridges to be built by virtue of the said act, shall continue the property of the persons therein mentioned, their executors, administrators or assigns, for the term of ninety-nine years from the time of passing the act, and no longer.

On the 19th of February, 1793, the commissioners, in pursuance of the power vested in them by the said act, entered into a contract by deed of indenture made and executed by and between the said commissioners of the one part, and sundry individuals of the other part, for building and maintaining the said bridges.

By this indenture the commissioners demised, granted, and to farm let, to the party of the second part, the bridges *to be* erected over the rivers Passaic and Hackensack, with the right of taking tolls thereon, not exceeding certain specified rates, for the term of ninety-seven years, from and after the 24th of November, 1792—being the entire term for which the property and franchise was vested in the commissioners by the statute. In consideration of this grant, the party of the second part covenanted to construct the bridges within the time limited by the act, at the points and in the manner designated by the commissioners—to tend the draws—to keep the bridges and the causeways leading thereto in good repair—and at the expiration of the term to surrender the bridges and causeways in good repair unto such persons as may be by law authorized to receive the same.

This instrument is called a lease, and the operative words of the grant are undoubtedly those of a lease. But we apprehend that the contract is neither in its technical import nor its practical operation a lease.

" A lease doth properly signify a demise or letting of lands,

rent, common, or any hereditament unto another, for a lesser time than he that doth let it, hath in it." *Shep. Touch.* 266.

" A lease is always for a less time than the lessor hath in the premises; for if it be for the whole interest it is more properly an assignment than a lease." " An assignment is properly a transfer or making over to another of the right one has in any estate ; and it differs from a lease only in this: that by a lease one grants an interest less than his own, reserving to himself a reversion ; in assignments he parts with the whole property. 2 *Blac. Com.* 317, 326.

By this contract the commissioners made no reservation ; but granted to the proprietors the entire franchise and for the whole term, which was vested in them by the statute.

Much less can the instrument be deemed a lease in its practical effect or operation. It purports to be a lease from the commissioners of the bridges over the rivers Passaic and Hackensack. But neither the bridges, nor the sites which they were to occupy were the property of the commissioners. Neither at the time of the contract, nor at any time afterwards, had the commissioners any property whatever in the structures themselves. At the time of the lease they were not built, and when erected they became, during the term, the absolute property of the proprietors.

By the act the right of building and owning bridges across certain navigable streams, and the franchise of taking tolls thereon was vested in the commissioners and in their assigns, for the term of 99 years from the 24th of November, 1790.

By the contract, the commissioners, by virtue of authority vested in them by the act, assigned the right of erecting the bridges and their entire interest in the franchise, to the individuals who contracted to build and maintain the bridges. The act contains an absolute grant of power for a limited term to the commissioners. By the contract the right and the franchise are transferred to the Proprietors—as fully as by the act they were vested in the commissioners. It seems an abuse of terms to denominate such a contract a lease. During the term of the grant, the bridges and the franchise are alike the absolute pro-

perty of the Company. The State has no interest in either. The bridges they never owned.

The property in the franchise was expressly and absolutely granted to the commissioners, and by them assigned to the Proprietors. In what sense, then, is the State a landlord, or these Proprietors the tenants of the property in question?

The obvious import and legal effect of the contract, as authorised and ratified by the statute, is simply this: The State grant to the Proprietors the right of constructing certain bridges over navigable rivers, and the franchise of taking tolls thereon for the term of ninety-nine years, in consideration of which the Proprietors covenant to construct and keep in repair the bridges during the designated term. And at the expiration thereof to surrender the property into the hands of the State. It seems difficult, if not impossible, to distinguish this contract in effect, from any other grant of power by the State, by charter or otherwise, or to deny to the State its ordinary power of imposing taxes upon the property of the grantees.

I am of opinion that these bridges are liable to be assessed, and liable, in like manner as other toll-bridges are made liable, to taxes by law.

It is objected, however, that the amount assessed upon these bridges is double the amount authorized by law. From the evidence before us it so appears. But if that be so, the appropriate remedy is not in this court, but by appeal to the commissioners of appeal in cases of taxation. It is not shewn that any principle of law is violated by the assessment. *Rev. Stat.* 1005, 8; 1014, § 49; *Osborne* v. *Danvers,* 6 *Pick.* 98.

In compliance with what was understood upon the argument, to be the desire of counsel, the court purposely avoid the expression of any opinion upon the regularity of the writ and its return—upon the competency of the evidence adduced, or upon the regularity and validity of the assessment in point of form.

AFFIRMED, 2 *Zab.* 593.

CITED *in Cook* v. *State,* 4 *Vr.* 478; *Newark Lime and Cement Co.* v. *Newark,* 2 *McCar.* 71.